[No. B028941. Second Dist., Div. Seven. Nov. 30, 1988.]

TERRY COX KESSLER, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Pursuant to rules 976 and 976.1 of the California Rules of Court, the Statement of Facts and part I are certified for publication.

318

COUNSEL

Michael J. Piuze for Plaintiff and Appellant.

Joseph A. Montoya, Anthony J. Ruffolo, Robert W. Vidor, Larry R. Danielson and David R. Simmes for Defendants and Respondents.

OPINION

JOHNSON, J.—

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

STATEMENT OF FACTS AND PROCEEDINGS BELOW

On October 27, 1981, Kessler was driving home on Pacific Coast Highway when she collided with the rear of a CalTrans road grader.[1] The accident occurred at approximately 11 p.m. It was raining intermittently that evening; however, immediately prior to the accident the rain became torrential. As was customary for heavy rains, reflective "flooded" signs had been set out on the highway and illuminated with road flares. Plaintiff testified the rain fell with such force her windshield wipers at times could not completely clear the windshield. Indeed, she contemplated pulling off the highway until the rain subsided.

The road grader had been operating for approximately one to two hours prior to the accident, traversing a five-hundred-to seven-hundred-foot section of Pacific Coast Highway and clearing it of mud. When the accident occurred, the road grader was stopped in the number two lane of the highway (i.e., the slow lane) to adjust its front blade to remove a large rock in the roadway.

A CalTrans employee who was also working on Pacific Coast Highway witnessed the accident from his plow truck, which was parked approximately 100 yards behind the road grader. This witness testified Kessler sped past him travelling between 45 to 50 miles per hour and, after coming through a curve, collided with the road grader. The witness also testified the road grader's warning lights were clearly visible to him.[2]

The evidence was conflicting concerning the speed Kessler was travelling when she collided with the road grader. Estimates ranged from 20 to 50 miles per hour. The posted speed limit was 45 miles per hour; however, the investigating California Highway Patrol (CHP) officer testified the safe

---

* See footnote, *ante,* page 317.

[1] A road grader is a 31-foot, 14-ton vehicle with a blade appended to its front used for the removal of mud and debris on roadways. Its cruising speed is 25 miles per hour although it travels more slowly when clearing debris.

[2] Kessler disputed whether the witness was actually present when the accident occurred.

speed for that portion of the highway, based upon existing weather conditions and the intensity of the rain, was between 0 and 25 miles per hour.

The State had taken no steps to divert traffic from the lane occupied by the road grader nor did it post any warning signs advising motorists of the road grader's presence. Instead, it relied upon the warning lights and signs located on the rear and top of the grader.[3] A provision of the CalTrans Maintenance Manual provided that if a "maintenance operation encroaches on any part of a traffic lane, that lane shall be closed or, by redelineation, combined with other traversable area to carry traffic safely around the work." At trial, CalTrans employees testified this provision did not apply because the clean-up operation was a "moving" as opposed to "stationary" operation and, thus, they were not required to close the lane. The evidence is in conflict concerning whether the taillights were functioning properly at the time of the accident. Additionally, it was controverted whether the work lights were on when the accident occurred. Kessler testified she saw no lights whatsoever until after she collided with the road grader at which time she saw the grader's strobe light.

At trial Kessler argued the State was negligent in (1) its maintenance of the road grader's warning lights, and (2) creating a dangerous condition by failing to warn motorists of the road grader's presence. The jury was given a special verdict setting forth the elements of each of these theories. In a nine-to-three decision, the jury answered negatively both to the question "Was the public property in question in a dangerous condition at the time of the accident on November 27, 1981?" and to whether the defendant was negligent in the maintenance of the vehicle. The trial court accordingly entered judgment in favor of the defendant. Plaintiff now appeals from that judgment.

STATEMENT OF CONTENTIONS*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

[3] The road grader was equipped with a variety of warning devices including a strobe light attached to its cab, flashing warning lights, work lights, red taillights, and a reflective sign containing the triangular symbol for warning.

*See footnote, *ante,* page 317.

DISCUSSION

I. *The Trial Court Properly Instructed the Jury on the Limited Immunity of Government Code Section 830.8.*

The State offered and the trial court gave BAJI instruction No. 11.60 which is based upon Government Code section 830.8.[4] Section 830.8 provides: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care."[5]

The instruction provided: "A public entity (or a public employee) is not liable for an injury proximately caused by the fact that the entity did not provide a 'Road Work Ahead' sign unless such sign was necessary to warn of a dangerous condition which endangered the safe movement of traffic and the dangerous condition was of such nature that it would not be reasonably apparent to, nor anticipated by, a person exercising due care."

■ Kessler contends section 830.8 does not apply here because the sign "Road Work Ahead" is not specifically described in the Vehicle Code. The State argues section 830.8 applies to all warning signs and devices which conform to the standards promulgated by the Department of Transportation. (See Veh. Code, §§ 21400; 21401.) We agree.

Section 830.8 provides a limited immunity for public entities exercising their discretion in the placement of warning signs described in the Vehicle Code. (*Black* v. *County of Los Angeles* (1976) 55 Cal.App.3d 920, 932 [127 Cal.Rptr. 916].) ■ "The broad discretion allowed a public entity in the placement of road control signs is limited, however, by the requirement that there be adequate warning of dangerous conditions not reasonably apparent to motorists." (*Anderson* v. *City of Thousand Oaks* (1976) 65 Cal.App.3d 82, 93 [135 Cal.Rptr. 127]; accord *Cameron* v. *State of California* (1972) 7 Cal.3d 318, 327 [102 Cal.Rptr. 305, 497 P.2d 777].) Thus, where the failure

---

[4] All statutory references are to the Government Code unless otherwise indicated.

[5] Section 830.4 provides: "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code."

to post a warning sign results in a concealed trap for those exercising due care, section 830.8 immunity does not apply. (*Mittenhuber* v. *City of Redondo Beach* (1983) 142 Cal.App.3d 1, 7 [190 Cal.Rptr. 694]; *Bakity* v. *County of Riverside* (1970) 12 Cal.App.3d 24, 31 [90 Cal.Rptr. 541].)

No court has previously determined what signs are "described in the Vehicle Code" for purposes of section 830.8. ■ Since this language is theoretically capable of more than one construction, we must choose the one which most comports with the purpose of the statute. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; see *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) In so doing, we may properly consider those statutes which bear on the meaning of section 830.8. (*People* v. *Corey* (1978) 21 Cal.3d 738, 743 [147 Cal.Rptr. 639, 581 P.2d 644].)

Here, the Legislature adopted the Law Revision Commission's Recommendations Relating to Sovereign Immunity as its expression of intent. (See Sen. Com. on Judiciary (Apr. 24, 1963) p. 1885 (2 Sen. J. 1963); Assem. Com. on Ways and Means (June 15, 1963) p. 5439 (3 Assem. J. 1963).) The commission, in proposing section 830.8, did not limit the signs to which the immunity should apply. (Recommendations Relating to Sovereign Immunity, No. 1, Tort Liability of Public Entities and Public Employers (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 824.) This would suggest section 830.8 should be broadly construed. (See Van Alstyne, Cal. Government Tort Liability Practice (1980) § 3.40, pp. 251-252.)

The commission did not include the phrase "described in the Vehicle Code" when making its recommendation. The Legislature's inclusion of this language appears to be the result of the statutory scheme governing highway signs and devices in effect when section 830.8 was enacted. At that time, the Vehicle Code described the signs referenced in sections 830.4 and 840.8 in a series of statutes collectively entitled "Description of Traffic Device."[6] Warning signs and devices were described in Vehicle Code section 21406 which provided: "The Department of Public Works shall determine and publicize the specifications for uniform types of warning signs, lights and devices to be placed upon a highway by any person engaged in performing work which interferes with or endangers the safe movement of traffic upon such highway." (Stats. 1959, ch. 3, p. 1674.)

■ Based upon this statutory scheme, and the Legislature's intent to provide a broad immunity for the placement of warning signs and devices,

---

[6] Included in this article were detailed descriptions of stop signs [Veh. Code, § 21400], yield signs [Veh. Code, § 21402], and warning approach signs [Veh. Code, § 21404].

the language "described in the Vehicle Code" clearly was intended to encompass all warning signs and devices which conform to the uniform standards set forth in Vehicle Code section 21406.

This, however, does not end our inquiry. Vehicle Code section 21406, along with the other statutes describing various traffic signs and devices, was subsequently repealed as part of an overall statutory scheme designed to created uniform standards for traffic signs used throughout the state. (Stats. 1969, ch. 1033, § 2, p. 2011.)[7] In their place, the Legislature enacted Vehicle Code section 21400 which provided the Department of Public Works (now the Department of Transportation) was to promulgate uniform standards for various traffic and warning signs and devices.[8]

The repeal of Vehicle Code section 21406 and the enactment of new Vehicle Code section 21400 does not materially alter the signs to which section 830.8 applies. Vehicle Code section 21400 contains similar language to section 21406 concerning the description of warning signs and devices. Accordingly, section 830.8 applies to all warning signs and devices which conform to the uniform standards promulgated by the Department of Transportation.

The question remains whether the particular sign "Roadwork Ahead" is one which conforms to the uniform standards promulgated by the Department of Transportation. The record is bereft of any evidence on this issue.

The State is barred by statute from placing any sign on the highway that fails to conform to the uniform standards promulgated by the Department of Transportation. (Veh. Code, § 21401.) Since Kessler cannot argue the State was required to use a sign it was legally barred from placing on the highway, we must assume the sign in question conforms to these standards and section 830.8 applies. The trial court therefore properly instructed the jury on section 830.8.

---

[7] The comment to BAJI No. 11.60 incorrectly refers to Vehicle Code section 21406 as the section describing road warning signs. The comment fails to note section 21406 was repealed in 1969.

[8] Vehicle Code section 21400 provided "The Department of Public Works shall, . . . adopt rules and regulations prescribing uniform standards and specifications for all official traffic control devices . . . and warning signs, lights and devices placed by persons engaged in performing work which interferes with or endangers the safe movement of traffic upon a street or highway." (*Ibid.*) Vehicle Code section 21400 has since been amended and its current language is virtually identical with former Vehicle Code section 21406.

## II.-VI.*

. . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment in favor of the State is affirmed. Each party is to bear its own costs on appeal.

Lillie, P. J., and Soven, J.,† concurred.

---

* See footnote, *ante,* page 317.
† Assigned by the Chairperson of the Judicial Council.