Filed 8/26/16  Kamal v. County of Los Angeles CA2/8
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| KARIM KAMAL, | B263531 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC058265) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County.  Samantha P. Jessner and Donna Fields Goldstein, Judges.  Affirmed.

Dalila Kamal-Griffin for Plaintiff and Appellant.

Hurrell Cantrall, Thomas C. Hurrell, Melinda Cantrall, and Warren Williams for Defendants and Respondents.

_____

Appellant Karim Kamal sued respondents the County of Los Angeles and the County of Los Angeles Department of Public Works (hereafter collectively the County except as otherwise noted) alleging causes of action under Government Code section 835 for a dangerous condition of a public road, negligence, and intentional infliction of emotional distress. The trial court granted the County's motion for summary judgment based on the defense of design immunity (see Gov. Code, § 830.6), and entered judgment in the County's favor. Kamal filed a timely appeal, and we affirm.

## FACTS

### *The Motorcycle Accident*

During the afternoon of April 17, 2011, Kamal was riding a motorcycle eastbound on Big Tujunga Canyon Road in the Vogel Flats area of the Angeles National Forest, heading in the direction of the intersection of Big Tujunga Canyon Road and Angeles Forest Highway. At the same time, defendant Samuel Morales (not a party to Kamal's present appeal) was riding a motorcycle in the opposite direction. In this area, Big Tujunga Canyon Road is an undivided roadway in a mountain area with two traffic lanes, one in each direction of travel.

As Morales approached a blind curve on Big Tujunga Canyon Road, he maneuvered his motorcycle up behind another motorcyclist in his lane. At or in the curve, Morales rode his motorcycle around the motorcyclist in front of him, crossed the center solid double yellow lines, and entered the opposing lane of traffic. Morales collided with Kamal. Kamal suffered serious and permanent injuries as a result of the collision. Following an investigation, the California Highway Patrol concluded that Morales "caused this collision by driving [his motorcycle] in violation of [the basic speed law prescribed by] Vehicle Code section 22350 . . . ."[1]

---

[1] Vehicle Code section 22350 provides: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

At the site of the accident, the two opposing traffic lanes of Big Tujunga Canyon Road are separated by a solid double yellow line running down the center of the roadway. Along one side of the roadway is mountain; along the other side is precipice. The County built this part of Big Tujunga Canyon Road during the 1940s. It "was designed using the common design and construction practice at the time for mountain roads."[2] A registered engineer then employed by the former Los Angeles County Road Department (now the County of Los Angeles Department of Public Works) approved the design for Big Tujunga Canyon Road. The engineer's name is long-since past anyone's recollection.

Driving westbound on Big Tujunga Canyon Road (Morales's direction of travel), after the intersection of Big Tujunga Canyon Road and Angeles Forest Highway, there was a "reverse turn" sign with an advisory speed sign stating "30 MPH" prior to the first curve in the roadway. Further along the roadway, before a second curve, there was a "winding road" sign with an advisory distance sign stating "NEXT 9 MILES." The curve where Morales drove his motorcycle into Kamal's rests approximately four miles west of the winding road and "NEXT 9 MILES" signs.

Within a 500 foot radius of the location where Morales drove his motorcycle into Kamal's, there were three vehicle collisions during the prior five year period. All three accidents involved drivers traveling eastbound, each of whom drove off the roadway and hit a fixed object. During the same time period, the County of Los Angeles Department of Public Works did not receive any complaints or requests for additional traffic control signs for the roadway within 500 feet in either direction from the location.

---

**2** Kamal contends the record contains disputed facts as to the exact year when the County designed and built Big Tujunga Canyon Road. We discuss this contention below in addressing his arguments.

*The Litigation*

In June 2012, Kamal filed a first amended complaint (complaint) against Morales, the County,[3] and the State of California. As to the County, the complaint alleged three causes of action, listed respectively: dangerous condition of public property under Government Code section 835;[4] negligence for maintaining a roadway without signs and for failing to provide "adequate law enforcement" to prevent drivers from speeding, and intentional infliction of emotional distress. As to the causes of action under section 835 and for negligence, the complaint alleged that Big Tujunga Canyon had "no speed limit sign anywhere . . . coming . . . down the mountain in the direction that . . . Morales was driving . . . ," that it lacked a sign warning of the "sharp curve" that Morales overdrove, and that it lacked speed bumps ahead of dangerous curves.[5]

The County of Los Angeles as well as the County of Los Angeles Department of Public Works filed answers to Kamal's complaint.[6]

The County filed a motion for summary judgment, or, in the alternative, a motion for summary adjudication of issues as to each of Kamal's three causes of action alleged against the County. We discuss the County's evidence in support of its motion for summary judgment below. Legally, the County argued that it could not be held liable for Kamal's injury based on four grounds: (1) immunity under sections 830.4 and 830.8 as to Kamal's claims based on a lack of signs; (2) Big Tujunga Canyon Road did not constitute a dangerous condition of public property within the meaning of section 835

---

[3]    Kamal's FAC also names Gail Farber, the director of the Los Angeles County Department of Public Works. Farber filed a successful demurrer. She is not involved in Kamal's present appeal.

[4]    All further undesignated section references are to the Government Code.

[5]    Morales filed a cross-complaint against the County for indemnity based on section 835. Morales's claims against the County are not at issue in Kamal's current appeal.

[6]    The same lawyers represented the two county defendants throughout Kamal's case. The record does not indicate why the County of Los Angeles filed an answer at a different time from the County of Los Angeles Department of Public Works.

because proper signs were in place; (3) Morales was the sole cause of the collision; and (4) design immunity under section 830.6 as to claims based on the physical characteristics of Big Tujunga Canyon Road.

Kamal filed an opposition to the County's motion. Among his many arguments, Kamal alleged that because the County of Los Angeles and the County of Los Angeles Department of Public Works each filed an answer in which they generally denied all of the allegations in Kamal's complaint, this demonstrated the entities denied they are governmental entities, thus disallowing them from asserting any immunity defense otherwise afforded to them. Kamal further argued that the "County of Los Angeles Department of Public Works" was in default, and precluded from filing a motion for summary judgment or adjudication, because he had named the "Los Angeles County Department of Public Works," as a defendant and only the "County of Los Angeles Department of Public Works" had filed an answer. Kamal contended only the "Los Angeles County Department of Public Works" should be recognized as a true party to his case, entitled to file a motion for summary judgment.

The parties argued the merits of the County's motion to the Honorable Samantha Jessner, and the court took the matter under submission. On May 27, 2014, Judge Jessner issued a minute order which stated that the County's motion for summary judgment was denied, but that its motion for summary adjudication of issues was granted as to all of Kamal's causes of action against the County.

As to Kamal's first cause of action for a dangerous condition of public property under section 835, Judge Jessner found the County established its design immunity defense, and that Kamal made no evidentiary showing in opposition. Although Judge Jessner's order included preliminary language referring to Kamal's claims alleging a failure to post adequate signage, it does not appear she explicitly ruled on this aspect of Kamal's claims.

As to Kamal's causes of action for negligence and intentional infliction of emotional distress, Judge Jessner ruled that the County was not liable as to these common

5

law claims pursuant to section 815, subdivision (a), in that there was no statutory basis for such claims.

Judge Jessner rejected Kamal's legal argument in his opposition that the County could not invoke any immunity available under the Government Code because their answers had included "general denials" and had thus denied being public entities.

Thereafter, the County filed a motion for clarification or reconsideration, explaining that the parties were confused by the order denying the motion for summary judgment but granting summary adjudication of all of Kamal's causes of action. The County suggested that Judge Jessner should have granted its motion for summary judgment. The County argued there were "new circumstances" within the meaning of Code of Civil Procedure section 1008 in that the parties were confused by the prior order. Further, the County argued that Code of Civil Procedure section 1008 did not "limit a court's ability . . . to reconsider a prior interim order so it may correct its own errors." The County relied upon *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107 (*Goel*) in asserting its position.

Before the scheduled hearing date on the motion for reconsideration, Kamal's case was transferred to the Honorable Donna Goldstein. The County re-set its motion for clarification of Judge Jessner's order before Judge Goldstein, and advised her that it had previously set its motion before Judge Jessner.

Judge Goldstein issued a tentative ruling granting the motion to clarify Judge Jessner's order, indicating that the County's motion for summary judgment was granted. Judge Goldstein noted that she did not have authority to reconsider Judge Jessner's order, but had authority to clarify the order. During arguments on the County's motion, Kamal's counsel stated that "plaintiff had no problem with Judge Goldstein making the decision." At the conclusion of the hearing, Judge Goldstein took the County's motion under submission.

Thereafter, Judge Goldstein issued a minute order transferring the County's motion for reconsideration or clarification back to Judge Jessner.

On February 20, 2015, Judge Jessner issued a tentative ruling indicating that she was inclined to grant the motion for summary judgment. During the hearing, Kamal's counsel stated that the plaintiff disagreed with the order, but "[w]e'll take the tentative as is." The court found the County's motion timely and proper under Code of Civil Procedure section 1008, since her prior order was unclear as to whether any causes of action remained. Alternatively, Judge Jessner ruled that pursuant to *Goel, supra,* 35 Cal.4th at pp. 1106-1008, she had the authority to correct an error in her prior interim ruling. Judge Jessner repeated that she ruled in favor of the County's design immunity defense.

On March 13, 2015, Judge Jessner signed and entered summary judgment in favor of the County, including a provision that the County "shall be entitled to statutory costs and fees."[7]

The County filed a memorandum of costs. The caption of the memorandum identified the defendant as the "County of Los Angeles Department of Public Works." The memorandum listed total costs of $18,872.80.

Kamal filed a motion to tax costs. Kamal argued that no costs were recoverable because the judgment in favor of the County was "void" on its face in that only the initial order granting summary adjudication of issues should be recognized. Further, that without a proper judgment, no costs could be awarded. Kamal also asserted that because the memorandum of costs had been filed by the County of Los Angeles Department of Public Works, no costs could be claimed by the County of Los Angeles as it was a separately named defendant who had filed a separate answer. Finally, Kamal argued that any claims by the County of Los Angeles Department of Public Works for costs associated with depositions taken on a date before it filed its answer could not be awarded.

---

[7] To be specific, the judgment reads: "Defendants County of Los Angeles and County of Los Angeles Department of Public Works shall be entitled to statutory costs and fees."

7

The trial court, now Judge Goldstein, denied Kamal's motion to tax costs in its entirety. The court ruled that the County of Los Angeles and the County of Los Angeles Department of Public Works were the same, had presented the same defense, were represented by the same attorneys, and that there would be one amount awarded to the County. During discussions at the hearing on the motion to tax costs, Judge Goldstein indicated that she would make minor corrections to the costs claimed by the County insofar as the County's lawyer conceded certain calculation errors. Kamal objected that the final amount of costs awarded totaled $18,872.80, the identical amount stated in the memorandum of costs. Thereafter, the judgment was modified to reflect a costs award of $18,476.16 to the County.

## DISCUSSION

### I.    Summary Judgment Was Properly Granted

Kamal contends the trial court erred in granting the County's motion for summary judgment because there are triable issues of fact concerning design immunity under section 830.6. We disagree.

### A.  Standard of Review

"We review the trial court's summary judgment rulings de novo, viewing the evidence in a light favorable to the plaintiff as the losing party, liberally construing the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing, and resolving any evidentiary doubts or ambiguities in the plaintiff's favor." (*Weber v. John Crane, Inc*. (2006) 143 Cal.App.4th 1433, 1438 (*Weber*).) A motion for summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown . . . there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that . . . defense." (*Id*., subd. (p)(2); and see *Weber, supra*, 143 Cal.App.4th at p. 1437.)

8

"In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).) In some instances, however, "evidence may be so lacking in probative value that it fails to raise any triable issue." (*Advanced Micro Devices, Inc. v. Great American Surplus Lines Ins. Co.* (1988) 199 Cal.App.3d 791, 795.)

## B. The Governing Law

In California, a public entity's liability for a party's personal injury is governed exclusively by statute. (See § 815; and see, e.g., *State of California v. Superior Court* (1984) 150 Cal.App.3d 848, 854.) Section 835, the basis for Kamal's first cause of action alleging injury caused by a dangerous condition of public property, provides:

> "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
> (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
> (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

With respect to the "except as provided by statute" language of section 835, section 830.6 provides:

> "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or

9

other body or employee could have approved the plan or design or the standards therefor. Notwithstanding notice that constructed or improved public property may no longer be in conformity with a plan or design or a standard which reasonably could be approved by the legislative body or other body or employee, the immunity provided by this section shall continue for a reasonable period of time sufficient to permit the public entity to obtain funds for and carry out remedial work necessary to allow such public property to be in conformity with a plan or design approved by the legislative body of the public entity or other body or employee, or with a plan or design in conformity with a standard previously approved by such legislative body or other body or employee. In the event that the public entity is unable to remedy such public property because of practical impossibility or lack of sufficient funds, the immunity provided by this section shall remain so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of the condition not conforming to the approved plan or design or to the approved standard. However, where a person fails to heed such warning or occupies public property despite such warning, such failure or occupation shall not in itself constitute an assumption of the risk of the danger indicated by the warning."

"'A public entity claiming design immunity [under section 830.6] must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) *substantial evidence* supporting the reasonableness of the plan or design.'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 343, italics added.) Under these elements, a jury is prevented from reweighing the factors considered by the public entity where it exercised reasonable discretion in approving a design at issue in a plaintiff's case. (*Id*. at p. 355.) Allowing such reweighing in tort litigation, when there is substantial evidence showing that a public entity exercised reasonable discretion in its design-selection processes, would create an undue danger that courts would take the administration of public improvements out of the hands of those to whom it had been entrusted by law. (*Id*. at pp. 348-354.) In sum, when it is shown that there is substantial evidence of the reasonableness of the plan or design, immunity affixes, notwithstanding that there might also be substantial evidence of a more reasonable plan, or that the plan or design was unreasonable.

10

When a public entity raises design immunity under section 830.6 as a defense in a motion for summary judgment, the issues are framed by these elements. (See *Wyckoff v. State of California* (2001) 90 Cal.App.4th 45, 50-51.) Accordingly, the defendant public entity does not have to prove that its design or plan actually was reasonable. (*Id*. at p. 51.) Instead, the defendant is merely required to present substantial evidence showing that a reasonable public employee or legislative body could have approved the plan or design that was in fact approved. (*Ibid*.) The existence of a conflict of evidence as to the actual reasonableness of the plan in hindsight will not create a triable issue that defeats a motion for summary judgment. (*Ibid*.) "'We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted. [Citations.]'" (*Ibid*., quoting *Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 939-940.)

### C. Analysis

Kamal contends the trial court erred in finding the County had design immunity because there is disputed evidence as to a whether Big Tujunga Canyon Road was "constructed pursuant to an approved plan." Kamal relies upon *Martinez v. County of Ventura* (2014) 225 Cal.App.4th 364 (*Martinez*) [8]. Essentially, Kamal argues the County presented insufficient evidence in support of its design immunity defense in the first instance, thus never requiring him to present evidence challenging the defense. The respondent's brief filed by the County on appeal does not include any argument addressing *Martinez*. Nevertheless, Kamal's argument based on *Martinez* does not persuade us to reverse.

In *Martinez*, plaintiff sued Ventura County after suffering injuries when he lost control of his motorcycle while driving over a raised asphalt berm around a drain, a so-called "top hat" drain system. Plaintiff alleged that the top hat drain system constituted a

---

[8] *Martinez* was decided a few months after Kamal filed his opposition to the County's motion for summary judgment and was not cited in his trial court papers. However, Kamal relied upon *Johnston v. County of Yolo* (1969) 274 Cal.App.2d 46 (*Johnston*) in support of these principles in the trial court, thus raising the same legal issue as that in *Martinez*.

11

dangerous condition of public property within the meaning of section 835. At a jury trial, the County asserted design immunity as a defense, but did not actually present evidence showing the engineering design plans for the top hat drain system. Plaintiff argued there was no evidence showing that the County exercised its discretion in approving a design when the top hat drain system was installed in 1900. Plaintiff further argued there was no evidence showing that there had been any official in a position of authority to approve the design in advance of the construction. The County rebutted Plaintiff's positions, arguing the top hat drain system was a maintenance project that did not require a formalized plan. Further, that official discretionary approval of the system could be implied by the evidence of consistent use over a 25-year period. The trial court instructed the jury on the elements of the design immunity defense and the jury returned a verdict in favor of the County on that basis.

The Court of Appeal reversed, finding that the verdict was not supported by substantial evidence because there was no evidence showing official approval of any plan for the top hat drain system. The court rejected the County's "implied" design approval theory, reasoning that allowing such a theory would essentially negate the required elements of the design immunity afforded under section 830.6, and would provide public entities with broad immunity from injury claims allegedly arising from a dangerous conditions on public property simply by virtue of its long-term use. (*Martinez, supra*, 225 Cal.App.4th at pp. 369-373.)

In contrast to *Martinez*, the County here presented evidence in support of its motion for summary judgment based on its claimed design immunity defense. The County's evidence included a declaration from Craig Cline, an engineer employed by the County of Los Angeles Department of Public Works, who authenticated design plans held in the County's records, and a declaration from John Squier, a former engineer with the County of Los Angeles Department of Public Works and currently a private engineering consultant, who explained the design approval processes for Big Tujunga Canyon Road. Mr. Squier's declaration provided the following facts concerning his

12

competence to explain the approval processes for the designs for Big Tujunga Canyon Road, and the history of those approval processes:

"3.　　From 1965 to 2000 I worked for the Department of Public Works (DPW) in various positions, retiring as an Assistant Deputy Director.  I was with DPW when it was known as the Los Angeles County Road Department ("Road Department").  The Road Department merged with other agencies in or around 1985 to become today's DPW.  From 2001 to 2003 I worked as a Senior Engineer for Willdan in the area of traffic engineering.  From 2003 to present I have worked as a Consulting Engineer for Boster, Kobayashi & Associates in the areas of road and traffic design, construction, operations and maintenance.  My 46 + years experience includes preparing, reviewing, and approving design plans, traffic plans and temporary traffic control plans for roadways and highways throughout the County of Los Angeles.

"[¶] . . . [¶]

"7.　　I am familiar with the custom and practice of the Road Department at the time BTCR was designed.  I am familiar with the portion of BTCR, 1,321 Feet West of CFM 5.69, at or near a curve.  BTCR was designed using the common design and construction practice at the time for mountain roads.  Alignment and grades were based primarily on balancing cuts and fills of the mountain in order to minimize the amount of importing or exporting of the dirt material for the construction of the road.  By necessity, mountain roads primarily followed the curvature and topography of the mountainside.  Plans consisted of a topographic map upon which a horizontal alignment would be established, and a plan showing a cross section, centerline topography and centerline profile.  These would be adjusted to balance cuts and fills and provide final curve radii, grades, cross section and drainage facilities, and meeting all design guidelines in effect at that time.

"8.　　The process for approving road design plans within the Road Department has changed over the years.  As established by state law and the Board of Professional Engineers, since, or about, 1929 it has been a requirement that the design of all civil engineering works be done by or under the direction of a professional engineer.  It was the custom and practice of the Road Department to adhere to that requirement.  Budgets for roads were, and are, approved by the Los Angeles County Board of Supervisors, but actual road design was, and is, approved at the discretion of registered engineers.  Whereas today engineers sign and affix their stamp to the plans, when BTCR was designed, it is my understanding that approvals for mountain roads were less formal, with the name of the engineer(s) simply listed on the plans.

13

"9. I have reviewed the document attached as Exhibit "1" to the declaration of Craig Cline, filed concurrently herewith, which depicts the relevant portions of WO 9226's Profile and Grade on BTCR at the subject curve.

"10. I have reviewed the document attached as Exhibit "2" to the declaration of Craig Cline, filed concurrently herewith, which depicts the relevant portions of WO 9226's Topographic Map at the subject curve. WO 9226's Profile and Grade and WO 9226's Topographic Map show the measurements for the roadway to be constructed, the berm and shoulder to be constructed, the areas to be covered by fill and the mountainside's cut areas. WO 9226's Topographic Map also identifies the various curves and their specifications, including the subject curve.

"11. Based on my review and my knowledge of the custom and practice of the Road Department, it is apparent that the design of BTCR followed the custom and practice of the day and that the design was approved under the discretion of a registered engineer."

The trial court noted that that Kamal offered no evidence in opposition.

We find the County's evidence was sufficient to establish a design immunity defense, thus shifting the burden to Kamal. Unlike the facts in *Martinez*, the County did not merely rely on an "implied plan approval," without offering any evidence of the plans for Big Tujunga Canyon Road. On the contrary, the County presented the design plans for Big Tujunga Canyon Road, along with an engineer's supporting explanation of the County's plan approval processes at the time. While the plan approval process likely might be more intensive now, it cannot be doubted that the County undertook a plan approval process for Big Tujunga Canyon Road in accord with the practices in place at that time. That a more elaborate plan approval process might to undertaken today does not defeat the County's design immunity defense. Because Kamal presented no evidence to refute the County's showing in support of its design immunity defense, the trial court correctly found the defense meritorious.

We reject Kamal's argument that the United States was required to, and did not, give its approval of the County's plans for Big Tujunga Canyon Road in order for the County to be granted design immunity under section 830.6. Kamal seems to suggest that two levels of plan approval, local and federal, had be secured before the County could

14

prevail on its design immunity defense. Kamal did not raise the issue of approval by the United States in the trial court and, thus, we find it is forfeited. (*Woodridge Escondido Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559, 574.) Although an issue may be considered on appeal for the first time where it involves "noncurable undisputed evidence, and raises a pure question of law" (*Wilson v. Lewis* (1980) 106 Cal.App.3d 802, 805), the issue of what the United States did or did not do to approve Big Tujunga Canyon Road would involve new facts. As a result, it does not fall within the exception allowing for review. Even assuming the United States somehow acted below a required plan approval standard, Kamal does not explain why design immunity is unavailable to the County where it followed an approval process as required by the design immunity statute afforded under section 830.6.

We also find unavailing Kamal's argument that the County failed to present evidence establishing that its design plans for Big Tujunga Canyon Road were reasonable. As we discussed above, proof of the reasonableness of a chosen design in hindsight is not the standard for application of design immunity under section 830.6. The immunity is properly granted when a public entity has reasonably assessed a plan and approved the plan. Kamal's argument that there could be a more reasonable plan for the design of Big Tujunga Canyon Road does not create a triable issue of fact. (*Wyckoff v. State of California, supra*, 90 Cal.App.4th at pp. 50-51.)

Finally, Kamal argues there is "no causal relation between [the County's] design and [the County's] failure to post signs." Kamal seems to argue that his case is not premised on a claim that the County's design of the physical characteristics or layout of Big Tujunga Canyon Road constituted a dangerous condition, but rather, that the road constituted a dangerous condition because the County failed to post appropriate signs. This argument is simply too undeveloped to support reversal of the trial court's decision to grant the County's MSJ. A judgment is presumed to be correct and error must affirmatively be shown. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Further, whether legal or factual, no error warrants reversal unless the appellant shows injury from the error. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.)

For these reasons, "an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt. [Citations.]" (*Id*. at pp. 286-287.) Under these principles, we will not reverse the judgment based on Kamal's "causal relation" argument. Beyond the insufficiency of Kamal's presentation here, we explain our reasons below (see section VI, *post*) for agreeing with the County that it is not liable to Kamal on a theory of inadequate signage.

## II. The Argument about Roadway Changes is Forfeited

Kamal next contends the decision to grant the motion for summary judgment based on design immunity defense must be reversed because there is disputed evidence in his case as to whether Big Tujunga Canyon Road has undergone physical changes since it was designed. In a one sentence presentation, Kamal argues: "These occurrences constitute a change in circumstances that results in loss of design immunity." No other discussion is offered, and no legal authority is offered in support of the legal proposition that design immunity can be "lost" by a "change in circumstances" after the design in question was approved. Again, we find Kamal's argument here is simply too undeveloped to support reversal of the trial court's presumptively correct decision to grant the County's MSJ. (*City of Santa Maria v. Adam, supra*, 211 Cal.App.4th at pp. 286-287; and see also, e.g., *Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743 [an appellate court may treat an argument as waived when it is not supported by both "coherent argument and pertinent legal authority"]

## III. The Third Party Negligence Claim is Forfeited

In another one-sentence argument, Kamal states: "It is well-settled that [a] dangerous condition created by a public entity may be the legal cause of an injury, even though the negligent act of another person has concurred in producing the injury." He cites a number of cases in support of his proffered legal rule. The abstract principle that

16

the County may be held concurrently liable for causing an injury with another party, standing alone, does not show that the trial court erred in finding merit in the County's design immunity defense in Kamal's case. First, the County did not win its motion for summary judgment based on the defense that Morales was wholly responsible for Kamal's injuries. More significantly, we find Kamal's argument too undeveloped to support reversal of the trial court's presumptive decision to grant the County's MSJ. (*City of Santa Maria v. Adam, supra*, 211 Cal.App.4th at pp. 286-287; *Kaufman v. Goldman, supra,* 195 Cal.App.4th at p. 743.)

## IV. The Claim that Evidentiary Rulings were Improperly Made is Forfeited

Kamal also contends Judge Jessner's decision to grant the motion for summary judgment must be reversed because she erred in ruling on certain evidentiary objections he raised in his opposition. Kamal does not specifically identify the evidence about which he complains. Accordingly, again Kamal had failed to meet his burden on appeal to show error. (*City of Santa Maria v. Adam, supra*, 211 Cal.App.4th at pp. 286-287; *Kaufman v. Goldman, supra,* 195 Cal.App.4th at p. 743.)

We also note that Kamal has not explained how any particular piece of evidence that was admitted or excluded adversely affected the trial court's decision to grant the motion for summary judgment. Under California Constitution, article 6, section 13, "[n]o judgment shall be set aside . . . in any cause . . . on the ground of . . . the improper admission or rejection of evidence, . . . or for any error as to any matter of procedure, unless, after an examination of the entire cause, . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." Section 13 is not merely a matter of appellate practice; it establishes the "constitutional principle of reversible error," namely, that a judgment shall not be reversed on appeal unless an evidentiary error has resulted in a miscarriage of justice. (Cf. *People v. Edward D. Jones & Co.* (2007) 154 Cal.App.4th 627, 634 [citing section 13 in context of procedural error].)

17

## V.    Reconsideration Was Properly Granted

In a series of arguments, Kamal contends Judge Jessner's decision to grant the County's motion for summary judgment must be reversed because Judge Jessner "had no authority to reconsider her ruling of May 27, 2014" granting only summary adjudication. We disagree.

### The Governing Law

Under Code of Civil Procedure section 1008, a court may, subject to prescribed procedural and timeliness rules, grant a motion for reconsideration of a ruling based on a party's presentation of "new or different facts, circumstances, or law." Section 1008 is intended to "limit the parties' ability to file repetitive motions but [does] not limit the court's ability, on its own motion, to reconsider its prior interim orders so it may correct its own errors." (*Goel, supra*, 35 Cal.4th at p. 1107.) In *Goel*, the court stated: "[w]e agree that it should not matter whether the 'judge has an unprovoked flash of understanding in the middle of the night' [citation] or acts in response to a party's suggestion. If a court believes one of its prior interim orders was erroneous, it should be able to correct that error no matter how it came to acquire that belief." (*Goel, supra*, 35 Cal.4th at p. 1108.) This said, the decision to initiate reconsideration must come from the court's own volition, and, "[t]o be fair to the parties, if the court is seriously concerned that one of its prior interim rulings might have been erroneous, and thus that it might want to reconsider that ruling on its own motion . . . it should inform the parties of this concern, solicit briefing, and hold a hearing." (*Ibid.*)

### Analysis

Kamal first argues that a court acts in "excess of its jurisdiction" if it grants a motion to reconsider under Code of Civil Procedure section 1008 when the moving party has not presented any new facts, circumstances, or law, and that the County did not do so here. We see no error.

We find that what occurred in Kamal's case truly had little to do with the procedures authorized under Code of Civil Procedure section 1008. The County's motion cited to, and was a proper motion under, *Goel, supra,* 35 Cal.4th at page 1107 in

that the County suggested to Judge Jessner that she should consider clarifying and correcting her order of May 27, 2014, which appeared to be erroneous. The order was internally inconsistent in that it denied the County's summary judgment motion, but granted it motion for summary adjudication of issues as to all of Kamal's causes of action against the County. The County was entitled under *Goel*, as would have been Kamal had he wanted, to seek clarification and correction from Judge Jessner regarding her May 27, 2014 order.

Kamal next contends the County "dealt their [reconsideration motion] a fatal blow" by setting it for hearing before Judge Goldstein, and that Judge Goldstein erred in transferring the motion back to Judge Jessner. Kamal argues that Judge Goldstein instead should have denied the County's motion for reconsideration because it was improper to have been filed before her. Kamal contends Judge Goldstein should have and "*directed* the parties to Judge Jessner rather than *transfer* the motion to Judge Jessner." Kamal argues that had Judge Goldstein correctly directed the parties back to Judge Jessner, "by then, the jurisdictional time to file a [reconsideration motion would have been] long past." We find no error for the reasons explained above. The time limits prescribed by section 1008 did not bar the County's motion for clarification and correction of the May 27, 2014 order. But even assuming that the time limits prescribed by Code of Civil Procedure section 1008 did apply, the County filed its motion within ten days of Judge Jessner's May 27, 2014 order, and, thus, did not miss the time deadlines. The fact that Judge Jessner did not entertain the motion for some time due to the transfer of the case between different courtrooms did not make the County's motion untimely filed.

Finally, Kamal contends Judge Jessner erred when she granted the County's motion for reconsideration because Code of Civil Procedure section 1008 does not give a judge the "authority to reanalyze" an order. Again, we find no error for the reasons explained above in addressing Kamal's first and second claims of reconsideration error. The County filed a proper request for clarification and correction of an order under *Goel, supra*, 35 Cal.4th at page 1107.

19

## VI.    Discovery

### A. The Request to Depose Los Angeles County Supervisor Michael Antonovich was Properly Denied

Kamal contends reversal is warranted because Judge Goldstein erred when she granted the County's motion for a protective order, prohibiting the deposition of Los Angeles County Supervisor Michael Antonovich, in whose district the accident on Big Tujunga Canyon Road occurred.  We disagree.

*Background*

After Judge Jessner issued the initial order for summary adjudication of all causes of action against the County, Kamal served the County with a notice of deposition for Supervisor Antonovich.  The County filed a motion for a protective order to preclude the deposition, arguing that the deposition hinted of harassment because Supervisor Antonovich would not have any personal knowledge of any facts about the motorcycle accident.  Kamal opposed the motion for a protective order, arguing that Supervisor Antonovich had a "clear obligation of oversight [of all roadways in the County] by personal inspection."  During the time when Kamal's case had been transferred to Judge Goldstein, she granted the County's motion to preclude supervisor Antonovich's deposition, reasoning the officials in the County of Los Angeles Department of Public Works had more relevant information about the County's roadways than an elected head of the county.

*Analysis*

Elected public officials generally are not required to give evidence in ordinary litigation involving the public agency in the absence of "compelling reasons."  (See, e.g., (*Deukmejian v. Superior Court* (1983) 143 Cal.App.3d 632, 633.)  As explained in *State Board of Pharmacy v. Superior Court* (1978) 78 Cal.App.3d 641:  "'If the head of a government agency were subject to having his [or her] deposition taken concerning any litigation affecting his [or her] agency or any litigation between private parties which may indirectly involve some activity of the agency, we would find that the heads of government departments . . . would be spending their time giving depositions and would

20

have no opportunity to perform their functions. [¶] . . . It would be oppressive and vexatious to require [the head of a government agency] to submit to an interrogation that might last for several hours and that would, of course, disturb government business.' [Citation.]" (*Id*. at p. 645.)

We have read nothing in Kamal's opening brief which persuades there were "compelling reasons" for him to take supervisor Antonovich's deposition *after* Judge Jessner had already issued her order granting the motion for summary adjudication of all causes of action. In short, Kamal has not shown us that it would have served any purpose, let alone a compelling purpose, for him to have been afforded the opportunity to depose supervisor Antonovich.

**B. The Request to Compel Production of Documents Was Properly Denied**

Kamal next contends reversal is required because Judge Goldstein erred when she denied Kamal's motion to compel responses to his requests for production of documents that were served *after* Judge Jessner granted the County's motion for summary adjudication. We disagree.

Even if we assume that there was error in denying this discovery, which we do not find, Kamal's arguments do not explain how the denial of discovery would have assisted his case. By the time he filed the discovery request, he had already lost the motion. As we have pointed out, no judgment may be reversed for a procedural error in the absence of a showing that the error resulted in a miscarriage of justice. (Cal. Const., art. 6, § 13.) Because Kamal has not persuaded us that further discovery responses from the County would have changed the result in his case, we will not reverse. Beyond this, we note that Kamal did not state in his opposition to the County's motion for summary judgment that he needed further discovery to oppose the County's motion, nor did he request a continuance to obtain further evidence.

**VII. Sign Immunity Also Supports the Grant of Summary Judgment**

As noted above, the primary thrust of Judge Jessner's initial order granting the motion for summary adjudication, as well as her subsequent order granting the motion for summary judgment focused on the issue of design immunity. The County now also

21

argues that the grant of summary judgment should be affirmed  because the County is further entitled to sign immunity under sections 830.4 and 830.8, as it set forth in its initial motion.  Because a trial court's decision to grant summary judgment must be upheld if correct on any ground, regardless of the court's stated reasons (*Barbary Coast Furniture Co. v. Sjolie* (1985) 167 Cal.App.3d 319, 331), we address the County's sign immunity arguments.  For the reasons we now explain, we find the County is correct that it was entitled to sign immunity, and that such immunity defeats Kamal's claims against the County.

A dangerous condition of public property means a condition of the property that creates a substantial, as opposed to minor, risk of injury when such property is used with due care.  (§ 830, subd. (a).)  Accordingly, even though it is foreseeable that persons might use public property without due care, a public entity is not liable for failing to take precautions to protect persons where such property would not pose a substantial risk to a person using due care.  (*Fuller v. State of California* (1975) 51 Cal.App.3d 926, 939.)  For example, a public entity is not liable to a person who drives 90 miles per hour on a highway that is safe for use at 65 miles per hour, even though it is foreseeable that persons will drive at the greater speed.  (*Ibid*.)

Kamal alleged that Big Tujunga Canyon Road constituted a dangerous condition of public property due to a lack of advisory speed limit signs, and a lack of signs warning of upcoming sharp curves in the roadway.  He alleged that appropriate signs would have deterred Morales from riding his motorcycle in the unsafe manner in which he did.  His arguments lack merit.

Kamal's allegations must be viewed against section 830.4, which reads:

> "A condition is not a dangerous condition within the meaning of this chapter merely because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, or speed restriction signs, as described by the Vehicle Code, or distinctive roadway markings as described in Section 21460 of the Vehicle Code."

22

Further, in light of section 830.8, which provides:

> "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the failure to provide traffic or warning signals, signs, markings or devices described in the Vehicle Code. Nothing in this section exonerates a public entity or public employee from liability for injury proximately caused by such failure if a signal, sign, marking or device (other than one described in Section 830.4) *was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care*." (Italics added.)

Under section 830.8, liability based on a failure to provide traffic or warning signs may be imposed only where a dangerous condition of the property would not be apparent to a reasonable person exercising due care. In other words, a public agency should post signs to warn of there was a traffic "trap," in the language of the published cases. (See, e.g., *Washington v. City and County of San Francisco* (1990) 219 Cal.App.3d 1531, 1536.) Thus, liability claims based on the types of regulatory signs described in section 830.4 and 830.8 are barred except where the lack of a warning sign combines with a dangerous condition of a roadway resulting in a "trap to the motorist." (*Frazier v. County of Sonoma* (1990) 218 Cal.App.3d 454, 459-460; *Hilts v. County of Solano* (1968) 265 Cal.App.2d 161, 174.)

The County argued it was immune from Kamal's claims based on the sign immunity afforded under sections 830.4 and 830.8 because it was not required to post signs to warn Morales to deter him from speeding around another motorist and crossing into an opposing traffic lane. In other words, the County argued that Morales did not face a traffic "trap" resulting from inadequate signage. In his opposition, Kamal argued that a dangerous condition existed because Big Tujunga Canyon Road is narrow, its shoulders were uneven in width, it was bordered on one side by a cliff and guardrail and there was a long straightaway that preceded the curve on the westbound side. Kamal argued that these conditions "trapped" *him* in the event a westbound driver "swerved into his lane." So, Kamal argued that the physical characteristics of the roadway constituted a dangerous

23

condition which he encountered; he did not address whether Morales faced a "trap" as he approached the curve in Big Tujunga Canyon Road. Kamal misunderstands that any alleged trap from a lack of signs needed to be faced by Morales, not himself.

Further, we agree with the County that Morales faced no "trap" on Big Tujunga Canyon Road as contemplated by the cases addressing sections 830.4 and 830.8. Kamal's arguments about an escape path are a matter of the physical conditions of Big Tujunga Canyon Road. As such, it is a matter under the design immunity afforded under section 830.6. With respect to the subject of signs, and the sign immunity afforded under sections 830.4 and 830.8, the width of Big Tujunga Canyon Road, its curves, grade, and surface conditions would be readily apparent to a driver such as Morales approaching a blind curve, and would not require any signage to avoid a "trap" because the basic speed law prescribed by Vehicle Code section 22350 is a sufficient speed regulation as to those conditions.[9]

Due care includes abiding by the basic speed law. Due care also includes not driving into an opposing lane of traffic on a curve in a highway where the driver's view is obstructed for such distance as to create a hazard in the event another vehicle might be approaching from the opposite direction. (See Veh. Code, § 21752, subd. (a).) Further, a public entity has no duty to post signs warning of readily apparent natural topography in order to avoid creating a dangerous condition of public property. (*Mittenhuber v. City of Redondo Beach* (1983) 142 Cal.App.3d 1, 7 (*Mittenhuber*) [a natural topographical condition is not a dangerous condition of property within the meaning of the governmental tort liability law].) Highways are normally adapted to the natural geographic feature of the lay of the land. (*Ibid*.)

---

[9] Vehicle Code section 22358.5 is consistent with this analysis. It reads: "It is the intent of the Legislature that physical conditions such as width, curvature, grade and surface conditions, or any other condition readily apparent to a driver, in the absence of other factors, would not require special downward speed zoning, as the basic rule of section 22350 is sufficient regulation as to such conditions."

24

The conditions on Big Tujunga Road are a function of the fact that the roadway is in a mountain area. The features of the road are characteristics of its typography. On a mountain road, the existence of a hill on one side and a cliff on the other are as much a part of the topography as are the curves in the road. Sign immunity in such surroundings is appropriate.

To the extent that Kamal claims that a straight segment of Big Tujunga Canyon Road induced Morales to pick up speed prior to entering the subject curve, thus necessitating a warning sign, his claim is akin to a claim that was rejected in *Mittenhuber, supra*. There, a plaintiff alleged that the topography of a roadway was such that drivers approaching an intersection from the north travelled "'downhill, often resulting in excessive speed'" and that children on bicycles approaching the intersection from the east also travelled "'downhill, often resulting in excessive speed and making it extremely difficult for them to stop quickly.'" Ruling in the context of a demurrer in *Mittenhuber*, Division Four of our court concluded: "The mere fact that a road slopes downhill does not mean that it is dangerous." (*Mittenhuber, supra*, 142 Cal.App.3d at p. 7.) By parity of reasoning, the same can be said in Kamal's current case. The mere fact that a road [is straight prior to a curve] does not mean that it is dangerous.

In summary, under the "trap" principle, there is a duty to post signs warning of a condition only when the condition is "'not reasonably apparent to motorists.'" (*Kessler v. California* (1988) 206 Cal.App.3d 317, 321.) Opposing lanes of traffic, the limited area for shoulders, curves, hillsides and the cliffs on Big Tujunga Canyon Road were all reasonably apparent to motorists. Kamal's opposition to the motion for summary judgment did not show that any of these characteristics were concealed or otherwise not reasonably apparent to motorists, thus necessitating signs. (*Kessler v. California, supra*, at p. 322; *Mittenhuber, supra*, 142 Cal.App.3d at p. 7.)

## XI. Costs

Kamal next claims the trial court abused its discretion when it awarded $18,476.16 in costs to the County. We are not persuaded.

Kamal first contends that no costs should be awarded because the order granting summary judgment is void because Judge Jessner lacked authority to grant the motion for summary judgment. Because we have already rejected these arguments, we do not find the judgment void.

Kamal next contends the trial court had no authority to award costs to the County because it did not file a memorandum of costs. Here, Kamal argues that the County of Los Angeles and the County of Los Angeles Department of Public Works filed separate answers, and "must . . . be treated as separate defendants" for purposes of costs. Further, that because only the name of the County of Los Angeles Department of Public Works explicitly appears in the caption box on the memorandum of costs, that the only costs that should be awarded are to that entity. Apparently, Kamal maintains that because the caption box on the memorandum of costs did not explicitly identify the defendants who were claiming costs as "County of Los Angeles Department of Public Works *et al*.," the "County of Los Angeles" forfeited any claim for costs.

Kamal carves out the costs which he calculates are separately attributable to the County of Los Angeles and asserts they are not recoverable. For example, Kamal notes the filing fees for the two answers filed by the County of Los Angeles and the County of Los Angeles Department of Public Works were $870, and argues that those fees should be cut so that an award of costs be made only for the one-half attributable to the answer filed by the County of Los Angeles Department of Public Works. In similar fashion, Kamal claims the filing fees for various motions filed jointly by the County of Los Angeles Department of Public Works and the County of Los Angeles should be cut in half. Further, Kamal argues that the costs for depositions which were noticed by the County of Los Angeles, before the County of Los Angeles Department of Public Works filed its answer should be denied because the County of Los Angeles did not file a memorandum of costs.

We disagree. Instead, we find the trial court properly found there was no reasonable basis for treating the two County-related defendants as distinct parties for purposes of costs. Kamal did not incur liability for double costs. In the end, the decision

26

whether to apportion costs was a matter for the trial court's discretion. (See generally, *Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 974-975.) A trial court abuses its discretion when its decision is arbitrary, capricious, or beyond the bounds of reason, all circumstances considered. (*Blackman v. Burrows* (1987) 193 Cal.App.3d 889, 893.) There simply was no abuse of discretion in failing to cut in half or wholly disregard certain costs because the County of Los Angeles was not listed on the caption box of the motion.

We now turn to specific challenges to the costs award. Kamal contends the $5,124 in costs claimed for the production of documents pursuant to a subpoena for records is "exorbitant and unreasonable." He claims the litigation support services company that assisted the County wrongly billed for photocopying, shipping, witness fees, fuel, check charges and "bate [*sic*] stamping." Again, we disagree. The record reference to which Kamal cites is a blanket reference to more than 100 pages of his appellant's appendix. We once again reiterate that an appellate court is not required to "scour the record unguided, [and] we may decide that the appellant has waived a point urged on appeal when it is not supported by accurate citations to the record. [Citations.]" (*City of Santa Maria v. Adam, supra*, 211 Cal.App.4th at pp. 286-287.) We decline to scan these voluminous records and find the point forfeited.

Kamal next objects that costs of $1,893 were *invoiced* by Ronsin after the County had filed its June 2014 motion asking Judge Jessner to clarify her May 2014 order. Kamal argues that, "[s]ince it was so evident to the County defendants that Judge Jessner meant to grant summary judgment, all . . . costs *incurred* [after] the County defendants moved for summary judgment were neither necessary nor reasonable and should be denied." (Italics added.) We deny Kamal's arguments because he has not provided any record reference showing the dates of the allegedly unnecessary services provided by Ronsin. Thus, his contention that services were provided after a litigation cut-off date cannot be verified.

Kamal objects that a transcript "was ordered by . . . Judge Jessner [at a] May 5, 2014 hearing," and that the costs of this transcript should not have been awarded to the County. Because Kamal has not provided any record references, as we have repeatedly noted are required, we cannot verify that the court actually ordered as transcript, or that the County sought costs for the transcript. We consider this issue forfeited as well.

## XII.  Kamal Received a Fair Hearing

Lastly, Kamal contends he "did not get a fair hearing." There can be no dispute, of course, that Kamal is correct in stating that a fair hearing is the foundation of due process, and that this includes an impartial judge and the opportunity to be heard. (See generally, 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 302 et seq., p. 914 et seq.) We simply disagree that he was denied such a hearing.

Here, Kamal claims the proceedings related to the motion for summary judgment were unfair because the final judgment signed and entered does not mention his opposition papers. Kamal seems to maintain that this is evidence that Judge Jessner did not consider the evidence and arguments in his opposition. We reject Kamal's argument. The form of the trial court's summary judgment is sufficient because it shows distinctly that the issues in Kamal's case were adjudicated. (See generally, 7 Witkin Cal. Procedure (5th ed. 2008) Judgment, § 29, p. 569.) Further, Judge Jessner's initial 10-page order issued granting the motion for summary adjudication of issues, which was subsequently incorporated into the decision to grant summary judgment, contains an extensive discussion of the issues in the case, and the respective parties' arguments and evidence. We simply do not agree with Kamal that the record establishes that he did not receive a fair hearing. In determining the fairness of the proceedings, we will look to the entirety of the record. (Cf. *People v. Miranda* (1987) 44 Cal.3d 57, 123 [in a criminal case, the court looked at the "entire record" in determining that the defendant "did indeed receive a fair trial"], declared not controlling on other grounds in *People v. Marshall* (1990) 50 Cal.3d 907, 933, fn. 4.) Having considered the entire record, we discern no fundamental unfairness suffered by Kamal in this case.

We also reject Kamal's argument that Judge Goldstein was biased against him, as demonstrated by the fact that she awarded "more costs than [the County] said was due." Kamal's argument is again premised on the assertion that costs were awarded to a segreable defendant who did not claim them.  As we have noted, the record does not support this proposition.

## DISPOSITION

The judgment, including the award for costs, is affirmed.  Respondents are awarded costs on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.


FLIER, J.